## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND
### BALTIMORE DIVISION

| | |
|---|---|
| **UNDER ARMOUR, INC.**  )<br>1020 Hull Street  )<br>Baltimore, Maryland 21230,  )<br> )<br>Plaintiff,  )<br> )<br>v.  )<br> )<br>**STEVEN M. CERSONSKY**  )<br>**DBA XO TRAINER**  )<br>16065 Brier Creek Drive  )<br>Delray Beach, Florida 33446  )<br> )<br>Defendant.  )<br> )<br> )<br> )<br> )<br> )<br> ) | CIVIL ACTION NO. _____<br><br>**JURY TRIAL DEMANDED** |

### COMPLAINT

Plaintiff Under Armour, Inc. alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters:

### NATURE OF THE ACTION

1.      This is a civil action for breach of contract, trademark infringement, trademark dilution, cybersquatting, and unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq.* and/or Maryland statutory and common law.  Under Armour seeks equitable and monetary relief from Defendant's repeated, willful breaches of an agreement that Defendant entered into with Under Armour, as well as from Defendant's violation of Under Armour's trademark rights in its famous

UNDER ARMOUR name and mark, ARMOUR mark, and other ARMOUR-formative marks (the "ARMOUR Marks")—with the bad-faith intent to profit from those marks.

2.     Despite Defendant's agreement with Under Armour to not use the mark ARMORE or any marks containing ARMOR/ARMOUR or any misspellings or variations thereof, Defendant continues to use ARMORE for fitness equipment, which directly breaches the parties' agreement, misappropriates the core of Under Armour's branding, and violates Under Armour's trademark rights in multiple ways, including by diluting Under Armour's famous UNDER ARMOUR and ARMOUR Marks and creating a likelihood of confusion with those marks.  Under Armour has tried to resolve this matter numerous times over the two-and-a-half years since Defendant executed the agreement with Under Armour, but as Defendant is clearly not interested, violations continue.

## PARTIES

3.     Plaintiff Under Armour is a Maryland corporation with a principal place of business at 1020 Hull Street, Baltimore, Maryland 21230.

4.     Defendant Steven M. Cersonsky is an individual doing business as XO Trainer with an address at 16065 Brier Creek Drive, Delray Beach, Florida, 33446.

## JURISDICTION AND VENUE

5.     The Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b).  Because Under Armour is a citizen of the State of Maryland and the Defendant is a citizen of Florida, and the matter in controversy exceeds $75,000, exclusive of interest and costs, the Court also has jurisdiction under 28 U.S.C. § 1332.  The Court has

supplemental jurisdiction over Under Armour's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are substantially related to its federal claims.

6.     The Court has personal jurisdiction over Defendant and venue is proper in this District under the parties' October 1, 2018 agreement ("2018 Agreement").  Paragraph 18 of the 2018 Agreement provides as follows:

> Any and all disputes between the parties arising out of or relating to this Agreement will be brought, heard, and determined in the United States District Court for the District of Maryland (Baltimore Division).

A copy of the 2018 Agreement is attached as Exhibit A.

7.     Additionally, the Court has personal jurisdiction over Defendant and venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Under Armour is located and is being harmed in this District; Defendant conducts business in this District; and the activity about which Under Armour complains has taken place and is continuing to take place in this District, including Under Armour's negotiations regarding and entry into the 2018 Agreement and Defendant's use of the infringing and dilutive trademarks and domain name to promote his products, which are directed to customers and potential customers in this District via Defendant and his websites.

## UNDER ARMOUR, ITS PRODUCTS, AND ITS ARMOUR TRADEMARKS

8.     Under Armour is one of the world's most successful, popular, and well-known providers of apparel, footwear, sporting goods, and accessories.  Through Under Armour's innovative use of advanced engineering and technology, it has revolutionized the performance-product industry.  In 2020 alone, Under Armour sold over $4.5 billion worth of products.

9.     Since at least as early as 1996, Under Armour has continuously used and promoted (through itself, its predecessor in interest, and its licensees) the UNDER ARMOUR name/mark for apparel.

10.    Over the years, Under Armour has expanded to a wide range of other products and services, including a full line of men's and women's athletic clothing, footwear, headwear, and accessories; workwear; tactical wear; bags; sports and exercise equipment; fitness/wellness mobile apps and wearable devices; and protective gear.  The distinctive UNDER ARMOUR name/mark has been used and promoted across Under Armour's extensive product line.

11.    In addition to its UNDER ARMOUR name/mark, Under Armour has used and promoted the ARMOUR mark alone and numerous other ARMOUR-formative marks in connection with its wide range of products and services, including GAMEDAY ARMOUR, BABY ARMOUR, OFFSHORE ARMOUR, SUN ARMOUR, ARMOUR BRA, ARMOUR STRETCH, ARMOUR GRABTACK, ARMOUR FLEECE, ARMOUR SELECT, ARMOUR ELITE, ARMOUR ACCESS, ARMOURBLOCK, ARMOURSTORM, ARMOURLOFT, ARMOURGRIP, ARMOURSIGHT, ARMOURSTEALTH, ARMOURBOX, and MY ARMOUR, among others.  These ARMOUR-formative marks have been used and promoted individually and/or together, and consumers have come to associate the ARMOUR portion of the marks with UNDER ARMOUR.

12.    Among its numerous products, Under Armour has offered exercise and fitness equipment, including wearable electronic devices and other types of sports equipment, including in connection with its ARMOUR Marks e.g.:













View Photos (3)

Accessories / Equipment

## Men's UA Armour Flex Pro Shin Guards ♡

$19.99 ★★★★☆ 4.3 (20)

4 interest-free payments of $4.99 with Klarna. Learn more

White / Silver - 102

SM | MD | LG

Qty 1 | Add to Bag | PayPal

**What's it do?**

We built these shin guards with ergonomic, form-fitting calf sleeves and UA Charged Cushioning® for unbeatable comfort and protection.

DNA | Specs | Fit & Care

- Armour Flex shell provides flexible protection
- Charged® Cushioning padding for the ultimate in comfort
- Meets NOCSAE standards



🔥 NEW

View Photos (1)

Men / Accessories / Equipment

## Men's UA Pro 4 Series Kit Sr. 12-16 ♡

$374.99 ★★★★★ 5.0 (1)

4 interest-free payments of $93.74 with Klarna. Learn more

Black / Graphite - 001



OSFA

Qty 1 | Add to Bag | PayPal

DNA | Specs | Fit & Care

- Chest Protector (15.5"): Over-the-shoulder protection with adjustable shoulder caps
- Extra protection in throat, sternum & shoulders
- AEGIS Microbe Shield helps remove unwanted bacteria & odor
- Leg Guards (14.5"): High impact plastic for ultimate durability & protection

6





Best Seller

Accessories / Equipment

## UA Performance HeatGear® Sleeve

$14.99 ★★★★☆ 4.1 (39)

4 interest-free payments of $3.74 with Klarna. Learn more

Black / White-001

S/M    L/XL

Qty
1

Add to Bag    PayPal

**What's it do?**

HeatGear® Armour is our original performance baselayer—the one you put on first and take off last. So we made it extra comfortable by wicking sweat and stretching so you can move. No athlete can go without it.

DNA | Specs | Fit & Care

- Ultra-tight, second-skin compression sleeve increases circulation to boost performance

Accessories / Equipment

## Unisex Project Rock Wrist Wraps

$25.00 ★★★★☆ 4.4 (19)

4 interest-free payments of $6.25 with Klarna. Learn more

Black / Steel - 001

OSFA

Qty
1

Add to Bag    PayPal

**What's it do?**

Project Rock training gear was built to help you find boundaries, then push right through them. Everything in this collection was personally approved by Dwayne Johnson, the hardest worker in the room. ANY room.

DNA | Specs | Fit & Care



7

## UNDER ARMOUR'S SALES AND
## PROMOTION OF ITS ARMOUR-BRANDED PRODUCTS

13.    Under Armour has sold billions of dollars' worth of products under the UNDER ARMOUR and ARMOUR Marks, which are promoted, offered, and sold nationwide through a wide variety of retail means, including thousands of retail stores.  These include Under Armour's own Factory and Brand House retail stores, as well as national, regional, independent, and specialty retailers such as *Foot Locker*, *Finish Line*, *Dick's Sporting Goods*, *Kohl's*, *Macy's*, *Dunham's*, *Modell's*, *Hibbett Sports*, *Nordstrom*, *Academy Sports & Outdoors*, *Bass Pro Shops*, *Cabela's,* and *The Army and Air Force Exchange Service.*

14.    Under Armour's products are also offered, sold, and promoted through its own websites, catalogs, and toll-free call center and the websites and mail order catalogs of many of its retailers, including the websites used by *Bloomingdale's*, *Cabela's*, *Bass Pro Shops*, *City Sports*, *Dick's Sporting Goods*, *Eastbay*, *Eastern Mountain Sports*, *Finish Line*, *Foot Locker*, *Gilt Groupe*, *Hibbett*, *Kohl's*, *LL Bean*, *Lord & Taylor*, *Macy's*, *MC Sports*, *Modell's*, *Nordstrom*, *Sportsman's Guide*, and *Sportsman's Warehouse*.

15.    For years, Under Armour has spent tens of millions of dollars annually advertising and promoting its ARMOUR Marks and products to the general public.  Under Armour has done so, widely and extensively, through virtually every available type of media, including print publications, signage, television, and the Internet.

16.    Under Armour also promotes and showcases its ARMOUR Marks and products on its own and authorized websites and social media sites, including www.underarmour.com, www.facebook.com/underarmour, www.twitter.com/underarmour, and www.instagram.com/underarmour, among others.

17.     Under Armour has run extensive, nationwide advertising campaigns that reinforce the

ARMOUR Marks as a potent shorthand for Under Armour and its vast product offerings—for example

the THIS IS YOUR ARMOUR, EARN YOUR ARMOUR, ARMOUR UP, YOUR ARMOUR JUST

GOT LIGHTER, and UNDER THE ARMOUR campaigns:









 

18.     With respect to publications and signage, Under Armour has advertised and promoted its ARMOUR Marks and products in a wide variety of nationally circulated magazines and newspapers.

19.     Further, the ARMOUR Marks have been featured on billboards and other signage in various cities, including Baltimore, Philadelphia, and New York City's Times Square.

20.     Under Armour has advertised and promoted its ARMOUR Marks and products through television commercials, including a television commercial during the Super Bowl; product placement in popular movies, national television programs, and video games; and coverage of sporting events featuring its branded products, among other means.

21.     Sponsorships, outfitting agreements, individual athlete agreements, and partnerships with famous celebrities represent another significant form of advertising and promotion.  Under Armour's ARMOUR Marks have been promoted through high-profile athletes and teams at the youth, collegiate, professional, and Olympic levels, including, for example, the most decorated Olympian of all time Michael Phelps; World Champion ski racer Lindsey Vonn; ballerina Misty Copeland; NBA basketball

stars Steph Curry (Golden State Warriors) and Joel Embiid (Philadelphia 76ers); MLB baseball stars

Bryce Harper (Philadelphia Phillies), Freddie Freeman (Atlanta Braves), and Buster Posey (San

Francisco Giants); NFL football stars Tom Brady (Tampa Bay Buccaneers), Cam Newton (Carolina

Panthers), and Patrick Peterson (Arizona Cardinals); supermodel Giesele Bündchen; famous celebrity

Dwayne "The Rock" Johnson; college sports teams, such as Auburn, Notre Dame, University of

Wisconsin, University of Maryland, Northwestern University, Navy, and South Carolina; and high

school sports teams around the country.

 










22.    From 2006 to 2021, Under Armour was an authorized supplier of footwear and gloves to the NFL and is currently an official performance footwear supplier to the MLB.

23.    In addition to its own substantial advertising and promotional activities, Under Armour and its ARMOUR Marks and products have received and continue to receive widespread unsolicited media coverage.  Indeed, many of the athletes, teams, and sporting events sponsored by Under Armour appear on nationally broadcast television programs and in widely circulated publications, exposing tens of millions of consumers to the ARMOUR Marks.

13

24.    Under Armour has received numerous awards for its commercial success in connection with the development of its innovative and technologically enhanced products and its marketing and branding achievements.  In 2014, Under Armour received the prestigious "Marketer of the Year" Award from *Advertising Age* magazine.  That same year, *Yahoo Finance* named Under Armour the 2014 "Company of the Year."  In 2015 and 2016, Under Armour ranked #4 (with a brand value of $5 billion in 2015 and $5.5 billion in 2016) on the Forbes list of "The World's Most Valuable Sports Brands."  In 2016, Under Armour also received the preeminent marketing industry award for the best "Ad of the Year" from *AdWeek* for its "Rule Yourself" campaign featuring 28-time Olympic medalist Michael Phelps.

25.    As a result of its distinctive nature, and thus inherent strength; widespread advertising, publicity, promotion, and sales; and longstanding and extensive use and recognition, the UNDER ARMOUR mark has been well known and famous for years.

26.    In *Under Armour, Inc. v. Exclusive Innovations, Inc.*, No. SAG-20-03427 (D. Md. May 21, 2021), this Court noted that "Under Armour's marks are famous in the United States due to its national advertising, celebrity sponsorships, and the number of in person and online retail locations." Similarly, in *Under Armour, Inc. v. Bode*, Opp. No. 91178653 (TTAB May 21, 2009), the Trademark Trial and Appeal Board of the United States Patent and Trademark Office (PTO) expressly acknowledged the fame of the UNDER ARMOUR mark.

## UNDER ARMOUR'S TRADEMARK REGISTRATIONS
## FOR ITS ARMOUR MARKS

27.    Under Armour owns, among others, the following valid and subsisting U.S. federal trademark registrations for its UNDER ARMOUR marks (true and correct copies of which are attached as Exhibit B):

| Mark | Reg. No. Reg. Date | Goods/Services |
|---|---|---|
| UNDER ARMOUR | 2279668 09-21-1999 | Clothing, namely, t-shirts, long sleeve shirts, mock turtle necks, hats, shorts, shirts, leggings, jersey's, pants, headwear for winter and summer, under wear, tank tops (male and female), winter caps, sweat shirts/pull overs, women's bra in Class 25 |
| UNDER ARMOUR | 2917039 01-11-2005 | Wristbands, headbands, rain suits, jackets, socks, skirts, athletic sleeves, hoods, skull wraps, skull caps, vests, hats, shorts, shirts, leggings, pants, headwear for winter and summer, underwear, tank tops, bras, girdles in Class 25 |
| UNDER ARMOUR | 3178549 11-28-2006 | Athletic footwear in Class 25 |
| UNDER ARMOUR | 3642614 06-23-2009 | Full line of athletic clothing in Class 25 |
| UNDER ARMOUR | 3712052 11-17-2009 | Ankle socks; athletic uniforms; baseball caps; baseball shoes; baseball uniforms; baselayer bottoms; baselayer tops; beach footwear; boxer briefs; boxer shorts; briefs; capri pants; children's headwear; coats; dresses; fleece pullovers; football shoes; footwear; foul weather gear; golf caps; golf shirts; golf trousers; hooded pullovers; hunting vests; jogging pants; knit shirts; men's socks; mittens; moisture-wicking sports bras; moisture-wicking sports pants; moisture-wicking sports shirts; polo shirts; rain jackets; rain trousers; rainproof jackets; rainwear; running shoes; short-sleeved or long-sleeved t-shirts; short-sleeved shirts; ski bibs; ski gloves; ski jackets; ski pants; ski wear; skorts; sleeveless jerseys; snow pants; snowboard gloves; snowboard mittens; snowboard pants; soccer boots; sport shirts; sports bras; sports jerseys; sports pants; sports shirts; sweat bands; sweat pants; tennis wear; thongs; thongs; training shoes; undershirts; visors; waterproof jackets and pants; wind pants; wind resistant jackets; wind shirts in Class 25 |

| Mark | Reg. No. Reg. Date | Goods/Services |
|---|---|---|
| UNDER ARMOUR | 4225998 10-16-2012 | Baseball shoes; Basketball sneakers; Beachwear; Bib overalls for hunting; Camouflage gloves; Camouflage jackets; Camouflage pants; Camouflage shirts; Camouflage vests; Cleats for attachment to sports shoes; Fishing shirts; Football shoes; Golf shorts; Hunting jackets; Hunting pants; Hunting shirts; Sneakers; Swimwear; Volleyball jerseys; Yoga pants; Yoga shirts in Class 25 |
| UNDER ARMOUR | 3700135 10-20-2009 | Clothing for athletic use, namely, padded shirts, padded pants, padded shorts, padded elbow compression sleeves in Class 25

Bags specially adapted for sports equipment; golf gloves; batting gloves; football gloves; lacrosse gloves; mouth guards for athletic use; cases for holding athletic mouth guards; athletic equipment, namely, guards for the lips; chin pads for athletic use; knee pads for athletic use; elbow pads for athletic use; forearm pads for athletic use; shin guards for athletic use; football girdles in Class 28 |
| UNDER ARMOUR | 3722377 12-08-2009 | Football towels; golf towels; towels in Class 24 |
| UNDER ARMOUR | 3500322 09-09-2008 | Eyewear, namely, sunglasses, lenses for sunglasses, and visors for use with helmets in Class 9 |
| UNDER ARMOUR | 4135826 05-01-2012 | Eyewear; goggles for sports in Class 9 |
| UNDER ARMOUR | 3901624 01-04-2011 | Backpacks specially adapted for holding laptop computers in Class 9 |
| UNDER ARMOUR | 3375771 01-29-2008 | Retail store services featuring apparel and sporting goods in Class 35 |

| Mark | Reg. No. Reg. Date | Goods/Services |
|---|---|---|
| UNDER ARMOUR | 3638277 06-16-2009 | Online retail store services featuring apparel, footwear, sporting goods, eyewear, headwear, wrist bands, sweat bands, belts, gloves, hand-warmers, plastic water bottles sold empty, sports bags, tote bags, travel bags, backpacks, messenger bags, duffel bags, wheeled bags, sling bags, umbrellas, towels in Class 35 |

28. Under Armour also owns, among others, the following valid and subsisting U.S. trademark registrations for the ARMOUR mark *per se* and other ARMOUR-formative marks, including for clothing, footwear, accessories, and other products (true and correct copies of which are attached as Exhibit C):

| Mark | Reg. No. Reg. Date | Goods/Services |
|---|---|---|
| ARMOUR | 3392904 03-04-2008 | Clothing, excluding golf clothing, namely, shorts, shirts, pants, and gloves in Class 25 |
| ARMOUR | 3970978 05-31-2011 | Footwear, excluding golf footwear in Class 25 |
| ARMOUR | 3720012 12-01-2009 | Clothing, excluding golf clothing, namely, hooded sweat shirts, crew neck shirts, long sleeve shirts, pullover shirts in Class 25 |
| ARMOUR | 4133248 04-24-2012 | Clothing, excluding golf clothing, namely, headwear, hats, caps, baseball caps and bras in Class 25 |
| ARMOUR | 5387620 01-23-2018 | On-line retail store services featuring apparel, footwear, headwear, eyewear, and sporting goods; and retail store services featuring apparel, footwear, headwear, eyewear, and sporting goods in Class 35 |

| Mark | Reg. No.<br>Reg. Date | Goods/Services |
|---|---|---|
| ARMOUR FLEECE | 3510702<br>10-07-2008 | Jackets, pants in Class 25 |
| GAMEDAY ARMOUR | 4094318<br>01-31-2012 | Clothing, namely, shirts, t-shirts, short-sleeved shirts, shorts; clothing for athletic use, namely, padded shorts; clothing for athletic use, namely, padded shirts in Class 25 |
| ARMOURVENT | 4642057<br>11-18-2014 | Athletic shirts; athletic shorts; baselayer bottoms; baselayer tops; bottoms; capri pants; capris; caps; compression garments for athletic or other non-medical use, namely, shirts, shorts; hats; headwear; jackets; leggings; long-sleeved shirts; shirts; short-sleeved shirts; shorts; sports shirts; t-shirts; tank tops; tank-tops; tops; track jackets; in Class 25 |
| ARMOUR BRA | 4142942<br>05-15-2012 | Bras in Class 25 |

29.    Under Armour also owns the following valid and subsisting Maryland trademark registrations for its famous ARMOUR mark, among others (true and correct copies of which are attached as Exhibit D):

| Mark | Reg. No. | Reg. Date | Products/Services |
|---|---|---|---|
| ARMOUR | 2012-0227 | 12/18/12 | Clothing, excluding golf clothing in Class 39 |
| ARMOUR | 2012-0228 | 12/18/12 | Knee pads for athletic use and protective athletic cups in Class 22 |

**DEFENDANT AND HIS WRONGFUL ACTIVITIES**

30.    In or around early 2016, Under Armour learned that Defendant Steven M. Cersonsky had filed a trademark application at the United States Patent and Trademark Office (PTO) to register the

mark ARMORE  for the following goods:  "Medicaments for promoting recovery from tendon and muscle injuries and disorders and sports related injuries; Medicaments for muscle, ligament, tendon, bone, cartilage; Medicaments to help assist with the regeneration of ligament and tendon fibers" in Class 5; "Robotic exoskeleton suits worn by humans for the purpose of enhancing the strength and endurance of the person wearing the suit" in Class 9; "Apparatus for physical training for medical use; Braces for limbs and joints, for medical use; Exercise machines for therapeutic purposes; Manually-operated exercise equipment for physical therapy purposes; Manually-operated resistance bands for physical therapy purposes; Manually-operated resistance tubing for physical therapy purposes; Medical and therapeutic device and apparatus, namely, a force and motion sensing apparatus and assisted exercise machine for the rehabilitation of arm, thigh, shoulder affected by neuromuscular diseases, disorders, or injuries for home or clinical use; Medical apparatus and instruments for treating osteoarthritis, osteoporosis, osteotraumatic injuries, degenerative bone diseases and joint diseases; Medical braces for elbow, knee, and shoulder; Physical rehabilitation, physical therapy and sports medicine equipment all designed specifically for medical use, namely, shoulder stretcher using resistance cables; Splints for arm, leg, and shoulder" in Class 10; and "Accessory for manually-operated exercise equipment, namely, accessory attachment to increase muscle resistance; Body-training apparatus; Body-training apparatus for strengthening arms, shoulders, legs; Exercise equipment, namely, shoulder stretcher using resistance cables; Exercise equipment, namely, resistance training exoskeleton; Exercise machines; Fitness machines and equipment, namely, weights, treadmills, rowing machines, stair stepping machines, resistance machines, stationary cycles; Manual leg exercisers; Manually-operated exercise equipment; Manually-operated exercise equipment for physical fitness purposes; Physical fitness equipment, namely, resistance training exoskeleton;

Sporting goods and equipment for speed training, namely, rings, cones, speed ladders, coaching sticks, training arches, ankle bands, resistance chutes, hurdles" in Class 28.  That application was assigned Serial No. 86/711,957 (the "ARMORE Application").  Printouts from the PTO's website with the filing details for the ARMORE Application are attached as Exhibit E.

31.    Around that same time, Under Armour also learned that Defendant was using and promoting the ARMORE name and mark in connection with wearable exercisers, fitness bands, towels, and other fitness-related products on his website at the <armorefitness.com> domain.  Armore LLC, which was upon information and belief owned and managed by Defendant, was and is still the registrant of that domain name (even though the business registration for Armore LLC has expired). Current WHOIS printouts for the <armorefitness.com> domain name showing this ownership information are attached as Exhibit F.

32.    In addition to ARMORE, Defendant was using variations of ARMOR to promote his ARMORE fitness products, including ARMORED, GET ARMORED, ARMORE UP, and ARMORE 10, which were used in various promotional campaigns on Defendant's website and on various social-media sites.  Making matters worse, Defendant was featuring athletes in UNDER ARMOUR-branded clothing in some of his promotional materials.

33.    On July 20, 2016, Under Armour filed Opposition No. 91229079 against the ARMORE Application with the Trademark Trial and Appeal Board ("TTAB").

34.    On February 1, 2018, following Under Armour's motion for discovery sanctions, the TTAB sustained the opposition and refused registration of the ARMORE Application.

35.    Despite the TTAB's order sustaining Under Armour's opposition and refusing the ARMORE Application, Defendant's use of ARMORE and various ARMOR-formative marks and

phrases continued and expanded.  As a result, on May 1, 2018, Under Armour filed a federal

complaint in the District of Maryland (Baltimore Division) alleging trademark infringement, unfair

competition, trademark dilution, and cybersquatting under federal and/or Maryland state law.  A true

and accurate copy of Under Armour's as-filed May 1, 2018 complaint is attached as Exhibit G.

36.    The parties then engaged in several months of settlement discussions, during which time

Defendant represented that he would rebrand and cease use of ARMORE and all ARMO[U]R-

formative marks and phrases.

37.    On October 8, 2018, Under Armour and Defendant entered into the 2018 Agreement

attached as Exhibit A.  The 2018 Agreement prohibits Defendant from using, registering, or seeking to

register any mark, name, or designation comprising or incorporating the terms ARMORE, ARMOUR,

or ARMOR for any products and services.  Defendant Steven M. Cersonsky signed the 2018

Agreement on his own behalf and as Manager of Armore, LLC.

38.    Paragraph 19 of the 2018 Agreement provides that if Defendant violates the 2018

Agreement, Under Armour is entitled to "(1) preliminary and injunctive relief; (2) specific

performance and/or monetary damages; (3) all costs and attorneys' fees that Under Armour incurs in

connection with the violation; and (4) any monetary or other relief awarded by the court, tribunal,

mediator, or arbitrator."  Paragraph 19 of the 2018 Agreement also provides that "[t]hese remedies will

be cumulative, non-exhaustive, and in addition to any other remedy to which Under Armour may be

entitled."  Paragraph 9 of the 2018 Agreement is binding on and inures to the benefit of the parties to

the agreement, including Defendant Cersonsky.

39.    Paragraph 1 of the 2018 Agreement provides that Defendant will "permanently cease all

use of, and will not (directly or indirectly) use, register, apply to register, or cause to be used or

registered in the future any trademark, name, logo, trade name, business name, brand, designation, and/or other identifier comprised of or containing ARMORE, ARMOR, ARMOUR, and/or any variations or any other identifiers confusingly similar to or dilutive of the ARMOUR Marks (the "Prohibited Terms") in any form (e.g., as, or as part of, a trademark, logo, trade name, business name, domain name, fictitious name, tag, label, packaging, product design, product description, app name, keyword, favicon, and/or social media name), in any medium (e.g., print, television, Internet, or other electronic or online means), in connection with any products or services."

40.    Paragraph 1 notwithstanding, Paragraph 2 of the 2018 Agreement permitted Defendant until December 7, 2018 to phase out all Prohibited Terms on his website, social media pages, and/or other electronic digital materials.  Paragraph 2 also required that Defendant transfer his <armorefitness.com> domain to Under Armour by December 27, 2018.

41.    Paragraph 3 of the 2018 Agreement permitted Defendant until March 8, 2019 to sell off and exhaust his existing physical inventory of products that bore any Prohibited Terms.  After March 8, 2019, Paragraph 3 of the 2018 Agreement required Defendant to destroy all remaining products and related materials bearing any of the Prohibited Terms.

42.    In or around April 2019, Under Armour learned that Defendant had breached the 2018 Agreement in multiple ways and that Defendant was again violating Under Armour's valuable rights in its ARMOUR Marks by continuing to use and promote the ARMORE and ARMOR-formative marks and offer products in connection with the ARMORE mark.  At this same time, Defendant also still had not transferred the <armorefitness.com> domain name.  Under Armour sent Defendant a letter on April 19, 2019 outlining these breaches and asking they be promptly resolved pursuant to the terms

of the 2018 Agreement.  A true and accurate copy of Under Armour's as-sent April 19, 2019 letter is attached as Exhibit H.

43.    Defendant did not resolve the breaches outlined in Under Armour's April 19, 2019 letter. As a result, Under Armour sent a follow-up letter to Defendant on November 15, 2019, reiterating its request that Defendant comply with his contractual obligations and resolve the outstanding breaches. A true and accurate copy of Under Armour's as-sent November 15, 2019 letter is attached as Exhibit I.

44.    After Under Armour sent its November 15, 2019 letter, the parties engaged in back-and-forth email communications over the next year and a half, wherein Defendant represented that he would remove all outstanding violations.  During these communications, Under Armour emailed Defendant several times outlining his continued violations of the 2018 Agreement.

45.    While Defendant resolved some violations, including rebranding his website to the name XO TRAINER, numerous violations persisted.  Given Defendant's continued violations, Under Armour sent yet another letter to Defendant on June 16, 2021 outlining Defendant's numerous continued uses of ARMORE and various ARMOR-formative marks in violation of the 2018 Agreement.  A true and accurate copy of Under Armour's as-sent June 16, 2021 letter is attached as Exhibit J.

46.    As of filing this lawsuit, Defendant has not resolved any of the breaches outlined in Under Armour's June 16, 2021 letter.

47.    In breach of Paragraphs 1 through 3 of the 2018 Agreement, Defendant still uses the mark ARMORE to promote and sell his products, as shown in the examples below and attached as Exhibit K.



(https://xotrainer.com/pages/shop)

(https://xotrainer.com/blogs/news/armore-wearable-resistance-arm-exerciser-break-a-sweat)

48.    In breach of Paragraphs 1 through 3 of the 2018 Agreement, Defendant continues to use active URLs that include ARMORE in the URL and direct to a page where Defendant's product can be purchased.  True and accurate screen captures of these pages are attached as Exhibit L.

49.   In breach of Paragraphs 1 through 3 of the 2018 Agreement, Defendant still uses ARMORE on Defendant's other websites, including on Defendant's fitness products, where Defendant offers those products for sale, as shown in the examples below and attached as Exhibit M.



(https://armore-fitness-store.myshopify.com/)



## ARMORE WEARABLE ARM EXERCISER:

Each Armore™ Wearable Arm Exerciser order includes **Regular Size** straps for wrists 5-1/2 to 7-1/2 inches, upper arms 9 to 16-1/2 inches **PLUS** easy-to-install **Improved** straps for wrists up to 8 to 10 inches, upper arms up to 17 to 19 inches. Our latest model comes with both regular and a package of Improved straps.

Each Armore™ Arm Exerciser also includes a handy nylon carry/storage pouch plus instructions to get you started on your way to building muscle right away.

Standard 2-4 day USPS shipping in the U.S. Need it faster? Tell us at checkout.





Buy 1 only $59.50



**Buy 2 only $89.00**
25% off sale price*. Save $30.00

(https://mail.armorefitness.com/armore-fitness-store.html)

26

50.    In breach of Paragraphs 1 through 3 of the 2018 Agreement, Defendant continues to promote and offer for sale his fitness product in connection with the ARMORE mark on Defendant's Amazon page, including on a model wearing an Under Armour-branded shirt, as shown in the example below and attached as Exhibit N.





(https://www.amazon.com/Armore-Wearable-Exerciser-Size-Fits/dp/B01L08N3M2)

51.    In breach of Paragraphs 1 through 3 of the 2018 Agreement, Defendant continues to use and promote the ARMORE mark in his social-media names (Twitter: @ArmoreFitness; Instagram: armore.fitness; YouTube: Armore™ Fitness; Pinterest: Armore Fitness) and on posts on his social-media pages, as shown in the examples below and attached as Exhibit O.



(https://www.instagram.com/armore.fitness/)





**Armore Fitness**
@ArmoreFitness

◎ United States    🔗 ArmoreFitness.com    🗓 Joined September 2015

**1,690** Following    **979** Followers

| Tweets | Tweets & replies | Media | Likes |

**Armore Fitness** @ArmoreFitness · Dec 4, 2017    · · ·
A little progress each day adds up to big results.

#ArmoreFitness

armorefitness.com
Promo Code ARMORE10

(https://twitter.com/armorefitness)



(https://www.youtube.com/channel/UCPBazGS_se-he-Q8zEYJwMg/videos)



## Armore Fitness

**88** Followers  •  **25** Following  •  **www.armorefitness.com**

The revolutionary Armore™ wearable arm exerciser - Strengthens muscle, burns fat, tones arms — anywhere, anytime!

## Armore Fitness's best boards

(https://www.pinterest.com/armorefitness/)

52.     In breach of Paragraph 2 of the 2018 Agreement, Defendant still has not transferred the <armorefitness.com> domain name to Under Armour.

53.     Defendant had actual and constructive knowledge of Under Armour's rights in its ARMOUR Marks, including as a result of Under Armour's successful TTAB opposition proceeding against the ARMORE Application, Under Armour's federal lawsuit filed against Defendant and his use of ARMORE and ARMOR-formative marks, and Defendant's 2018 Agreement with Under Armour.  Yet, Defendant has eschewed his contractual obligations and continued to use his ARMORE mark in bad faith to take advantage of the tremendous reputation and goodwill of Under Armour and its famous trademarks.

54.     Defendant knew or should have known that his ARMORE mark and <armorefitness.com> domain name was (and are) infringing and dilutive.  Thus, Defendant acted knowingly, willfully, maliciously, wantonly, fraudulently, in reckless regard of the truth, and in bad faith.

## INJURY TO UNDER ARMOUR AND THE PUBLIC

55.     Defendant's unauthorized use of Defendant's ARMORE name/mark in violation of the 2018 Agreement is likely to cause confusion, mistake, and deception as to the source or origin of Defendant and/or his products, and is likely to falsely suggest a sponsorship, connection, or association of Defendant, his products, and/or his commercial activities with Under Armour.

56.     Defendant's unauthorized use of his ARMORE name/mark in violation of the 2018 Agreement has damaged and irreparably injured, and, if permitted to continue, will further damage and irreparably injure, Under Armour and its ARMOUR Marks.

57.     Defendant's unauthorized use of his ARMORE name/mark in violation of the 2018 Agreement has irreparably injured, and, if permitted to continue, will continue to irreparably injure the public, who has an interest in being free from confusion.

58.     Defendant's actions described above have diluted and will continue to dilute the distinctiveness and value of Under Armour's famous ARMOUR Marks and thus will further damage and irreparably injure Under Armour and its ARMOUR Marks.

59.     Defendant knew or should have known that his activities described above violated the 2018 Agreement, were infringing and dilutive, and constituted cybersquatting, and thus Defendant acted knowingly, willfully, in reckless regard of the truth, and in bad faith.

**FIRST CLAIM FOR RELIEF**
**<u>Breach of Contract</u>**

60.     Under Armour repeats and realleges each and every allegation set forth in Paragraphs 1 through 59 of this Complaint.

61.     The 2018 Agreement is valid, binding, and enforceable by Under Armour against Defendant.

62.     Defendant materially and repeatedly breached, and continues to be in material breach, of the 2018 Agreement as a result of his actions described above.

63.     Under Armour has suffered damages that were proximately caused by Defendant's material breaches of the 2018 Agreement.

**SECOND CLAIM FOR RELIEF**
**Trademark Infringement Under**
**Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)**

64.     Under Armour repeats and realleges each and every allegation set forth in Paragraphs 1 through 63 of this Complaint.

65.     Without Under Armour's consent, Defendant used and continues to use in commerce reproductions, copies, and colorable imitations of Under Armour's registered ARMOUR Marks in connection with the offering, distribution, and advertising of goods and services, which are likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

**THIRD CLAIM FOR RELIEF**
**Trademark Infringement, False Designation**
**of Origin, Passing Off, and Unfair Competition**
**Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)**

66.     Under Armour repeats and realleges each and every allegation set forth in Paragraphs 1 through 65 of this Complaint.

67.     Defendant's actions, as described above, are likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of Defendant, his products, and/or his commercial activities by or with Under Armour, and thus constitute trademark infringement, false designation of origin, passing off, and unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

**FOURTH CLAIM FOR RELIEF**
**Trademark Dilution Under Section**
**43(c) of the Lanham Act, 15 U.S.C. § 1125(c)**

68.     Under Armour repeats and realleges each and every allegation set forth in Paragraphs 1 through 67 of this Complaint.

69.     Under Armour's ARMOUR Marks are famous, as that term is used in 15 U.S.C. § 1125(c), and were famous prior to Defendant's first use of his ARMORE name and mark based on, among other things, the inherent distinctiveness and federal registration of Under Armour's ARMOUR Marks and the extensive nationwide use, advertising, promotion, and recognition of those marks.

70.     Defendant's actions, as described above, are likely to dilute the distinctive quality of Under Armour's famous UNDER ARMOUR mark by blurring in violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c), as amended by the Trademark Dilution Revision Act of 2006.

**FIFTH CLAIM FOR RELIEF**
**Cybersquatting Under Section**
**43(d) of the Lanham Act, 15 U.S.C. § 1125(d)**

71.     Under Armour realleges and incorporates by reference Paragraphs 1 through 70 as though fully set forth here.

72.     Defendant has registered and/or used the <armorefitness.com> domain name with a bad-faith intent to profit from Under Armour's ARMOUR Marks.

73.     Under Armour's ARMOUR marks were distinctive and famous at the time Defendant registered and/or used the <armorefitness.com> domain name.

74.     Many of Under Armour's ARMOUR Marks were federally registered at the PTO at the time Defendant registered and/or used the <armorefitness.com> domain name.

75.     The <armorefitness.com> domain name is identical, confusingly similar, and/or dilutive of Under Armour's ARMOUR Marks.

## SIXTH CLAIM FOR RELIEF
### Trademark Infringement Under
### Md. Code Bus. Reg. § 1-414 *et seq.*

76.     Under Armour repeats and realleges each and every allegation set forth in Paragraphs 1 through 75 of this Complaint.

77.     Defendant's use, without the consent of Under Armour, of a reproduction and/or colorable imitation of Under Armour's registered UNDER ARMOUR mark in connection with the sale, offering for sale, and/or advertising of goods or services, is likely to cause confusion, or to deceive as to the origin of the goods or services, and thus constitutes trademark infringement in violation of Md. Code Bus. Reg. § 1-414 *et seq.*

78.     Defendant's reproduction and/or colorable imitation of Under Armour's registered UNDER ARMOUR mark and application of that reproduction and/or colorable imitation to Defendant's advertising, labels, prints, receptacles, signs, or wrappers that are intended to be used with goods or services and/or in conjunction with the sale or other distribution of goods or services in Maryland constitutes trademark infringement in violation of Md. Code Bus. Reg. § 1-414 *et seq.*

## SEVENTH CLAIM FOR RELIEF
### Trademark Infringement and Unfair Competition
### Under Maryland Common Law

79.     Under Armour repeats and realleges each and every allegation set forth in Paragraphs 1 through 78 of this Complaint.

80.     Defendant's actions, as described above, are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant's with Under

Armour, or as to the origin, sponsorship, or approval of Defendant, his products, and his commercial activities by or with Under Armour such that Defendant's acts constitute infringement of Under Armour's proprietary rights in its ARMOUR Marks, misappropriation of Under Armour's goodwill in those marks, and unfair competition under Maryland common law.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Under Armour respectfully demands a trial by jury on all issues properly triable by a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Under Armour respectfully requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including, but not limited to, the following:

A.  An Order declaring that Defendant's unlawful activities described above breach the 2018 Agreement; infringe and dilute Under Armour's ARMOUR Marks; and constitute cybersquatting and unfair competition under federal and/or state law, as detailed above;

B.  A permanent injunction enjoining Defendant and his employees, agents, partners, companies, affiliates, distributors, dealers, and all persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise (including domain-name registrars and Internet Service Providers (ISPs)):

1.    From using, registering, or seeking to register the ARMORE mark in any form, including in connection with any other wording or designs, and from using any other marks, logos, designs, designations, or indicators that are confusingly similar to any of Under Armour's ARMOUR Marks and/or dilutive of Under Armour's UNDER ARMOUR mark;

2.      From registering or using in any manner, any domain name that incorporates Under Armour's ARMOUR Marks or any name, mark or designation confusingly similar thereto or dilutive thereof (including, but not limited to, any indicators that incorporate ARMOUR or ARMOR, e.g., <armorfitness.com>);

3.      From representing by any means whatsoever, directly or indirectly, that Defendant, any products or services offered by Defendant, or any activities undertaken by Defendant, are associated or connected in any way with Under Armour or sponsored by or affiliated with Under Armour in any way; and

4.      From assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs B(1) through (3) above.

C.      An Order directing Defendant (and the relevant registrar and registry) to transfer to Under Armour the <armorefitness.com> domain name and all other domain names Defendant owns or controls that contain any of Under Armour's ARMOUR Marks, any marks confusingly similar to any of Under Armour's ARMOUR Marks, and/or any marks dilutive of Under Armour's UNDER ARMOUR mark (including, but not limited to, any domain names comprised of or containing ARMOUR or ARMOR);

D.      An Order directing Defendant to destroy all products, packaging, signage, advertisements, promotional materials, stationary, forms, and/or any other materials and things that contain or bear Defendant's ARMORE mark or any other marks, logos, designs, designations, or indicators that are confusingly similar to any of Under Armour's ARMOUR Marks and/or dilutive of Under Armour's UNDER ARMOUR mark;

E.      An Order directing that, within thirty (30) days after the entry of the injunction, Defendant file with this Court and serve on Under Armour's attorneys a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

F.      An Order requiring Defendant to pay statutory damages under 15 U.S.C. § 1117(d), on election by Under Armour, in an amount of one hundred thousand dollars ($100,000) for the registration and use of the <armorefitness.com> domain name;

G.      An Order requiring Defendant to account for and pay to Under Armour any and all profits arising from the foregoing acts, and increasing such profits, in accordance with 15 U.S.C. § 1117 and other applicable laws, including, but not limited to, Md. Code Bus. Reg. § 1-414 *et seq.*;

H.      An Order requiring Defendant to pay Under Armour damages in an amount as yet undetermined caused by the foregoing acts, and trebling such damages in accordance with 15 U.S.C. § 1117 and other applicable laws, including, but not limited to, Md. Code Bus. Reg. § 1-414 *et seq.*;

I.      An Order requiring Defendant to pay Under Armour all of its litigation expenses, including reasonable attorney's fees and the costs of this action pursuant to 15 U.S.C. § 1117 and other applicable laws;

J.      An Order requiring Defendant to pay Under Armour all of its actual attorney's fees, costs, and expenses incurred in connection with this action and in connection with enforcing the Order issued in connection with this action pursuant to the 2018 Agreement;

K.      An Order requiring Defendant to pay Under Armour punitive damages under Maryland common law; and

L.      Other relief as the Court may deem appropriate.

Dated:  January 11, 2022                     Respectfully submitted,

                                             */s/ Douglas A. Rettew*
                                             Douglas A. Rettew (29815)
                                             Patrick J. Rodgers (21148)
                                             Rosie Norwood-Kelly (*pro hac vice*
                                             forthcoming)
                                             FINNEGAN, HENDERSON, FARABOW,
                                               GARRETT & DUNNER LLP
                                             901 New York Avenue, NW
                                             Washington, D.C. 20001-4413
                                             (202) 408-4000 (phone)
                                             (202) 408-4400 (fax)
                                             Email: doug.rettew@finnegan.com
                                             Email: patrick.rodgers@finnegan.com
                                             Email: rosie.norwood-kelly@finnegan.com

                                             ***Attorneys for Plaintiff***
                                             ***Under Armour, Inc.***